**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **WILLIAMSON STRONG** *et al.*, ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **v.** ) | **Case No. 3:15-cv-00739** |
| ) | **Judge Aleta A. Trauger** |
| **THE TENNESSEE BUREAU OF** ) | |
| **ETHICS AND CAMPAIGN FINANCE,** ) | |
| **REIGSTRY OF ELECTION FINANCE,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Before the court is the Renewed Motion to Dismiss (Doc. No. 24) filed by defendants the Tennessee Bureau of Ethics and Campaign Finance, Registry of Election Finance (the "Registry"), and Tom Lawless, Patricia Heim, Norma Lester, and Tom Morton in their official capacities as members of the Registry. The defendants seek dismissal of the Complaint on the basis that the court lacks subject-matter jurisdiction and, alternatively, that the Complaint fails to state a claim for which relief may be granted. The plaintiffs have filed a Response in Opposition (Doc. No. 31), in which they do not dispute the facts alleged in the defendants' motion but, instead of responding on the merits, request that the court "stay briefing and ruling on the Motion to Dismiss and continue the stay" previously imposed by the court. (Doc. No. 31, at 1.) The defendants have filed a Reply (Doc. No. 32), arguing that the plaintiffs' asserted basis for continuing the stay is unsupported by the facts or the law.

Despite the plaintiffs' failure to respond to the merits of the Motion to Dismiss, the court finds, as set forth herein, that there is no basis for reinstituting the stay and that all but one of the plaintiffs' claims have been rendered moot by events that have taken place since the filing of the

lawsuit. Those claims are subject to dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction. The plaintiffs' damages claims arguably have not been rendered moot, but they are subject to dismissal under Rule 12(b)(6) for failure to state a claim for which relief may be granted. The defendants' motion will therefore be granted and this action, dismissed.

## I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiff Williamson Strong is an unincorporated, unregistered group of Williamson County, Tennessee parents who seek to engage their community in a "lively discussion and debate" of the issues concerning the Williamson County public schools and to encourage voter turnout in school board elections. (Compl. ¶¶ 2, 12.) Each of the individual plaintiffs is a founding member of Williamson Strong. (Compl. ¶¶ 13–17.)

The Registry is a state agency created by the Tennessee legislature and is tasked with enforcing the Tennessee Campaign Financial Disclosure Act ("CFDA"), Tenn. Code Ann. § 2-10-101 *et seq.*, among other election-related laws. (Compl. ¶ 18.) Each of the natural person defendants, Tom Lawless, Patricia Heim, Norma Lester, and Tom Morton, is an appointed member of the Registry, and each is sued in his or her official capacity only. (Compl. ¶¶ 19–22.)

In December 2014, Williamson County school board member Susan Curlee, who is not a party to this lawsuit, filed a sworn complaint (the "Curlee complaint") with the Registry, alleging that Williamson Strong had violated the CFDA by failing to register as a political campaign committee and failing to file disclosure reports with the Registry. (Compl. ¶¶ 43, 45–46; Compl. Ex. B, Doc. No. 1-2, at 2.)[1] The Williamson County District Attorney General presented the

---

[1] The Complaint also alleges that Curlee filed criminal charges with the Williamson County District Attorney and "publicly presented slanderous and unfounded allegations" about the plaintiffs. Because Curlee is not a party, these allegations are not relevant to the present motion.

Curlee complaint to the Tennessee District Attorneys General Conference, which reviewed the complaint and rejected it without referring it to the Registry. According to the plaintiffs, that action should have precluded the Registry's exercise of jurisdiction over the Curlee complaint. The Registry nonetheless proceeded to process the Curlee complaint. (Compl. ¶¶ 50–51.)

On December 11, 2014, the Registry notified Williamson Strong that it had set a preliminary hearing date of January 14, 2015 to review the Curlee complaint and informed the plaintiffs that they were welcome to attend the meeting but that it was "a preliminary review based on the complaint itself." (Compl. Ex. B, Doc. No. 1-2, at 1.) After reviewing the Curlee complaint and attached exhibits, the Registry issued a show-cause notice to Williamson Strong. (Compl. ¶ 53.)

An initial hearing was conducted on March 11, 2015. Based on the volume of documents and affidavits submitted by Curlee and the plaintiffs, the hearing was deferred until May 13, 2015. (Compl. ¶ 70.) The Registry ultimately determined that Williamson Strong qualified as a political campaign committee, as that term is defined by Tenn. Code Ann. § 2-10-102(12)(A), and that it had violated the CFDA by failing to certify a campaign treasurer and failing to file financial disclosure documents, in violation of Tenn. Code Ann. §§ 2-10-105(e)(1) and (c)(1). (Compl. ¶ 86; *see also* June 2, 2015 Order Assessing Civil Penalties, Doc. No. 7-2, at 16–18.) The Registry fined Williamson Strong $2,500 for each violation, or a total of $5,000. (Compl. ¶ 88; Doc. No. 7-2, at 18.)

On July 1, 2015, Williamson Strong filed a Petition for Review and Hearing Regarding Order Assessing Civil Penalties pursuant to the Tennessee Uniform Administrative Procedures Act and the CFDA, seeking review by an Administrative Law Judge ("ALJ") of the Registry's order assessing civil penalties and appealing all findings made in the Registry's order. (Doc. No.

7-3.)

On the same day, the plaintiffs filed this lawsuit under 42 U.S.C. § 1983 against the Registry and its members in their official capacity, alleging that the Registry lacked jurisdiction to consider the Curlee complaint, that the facts failed to support its conclusion that Williamson Strong was a political campaign committee or that it had violated the CFDA, and generally that they were deprived of due process during the hearing. The actual *claims* pressed by the Complaint, however, are that Tenn. Code Ann. § 2-10-102(12)(A) violates Tennesseans' rights to free speech and freedom of association as protected by the First Amendment to the United States Constitution and Article I, Section 19 of the Tennessee Constitution. They seek (1) an award of damages to compensate them for being required "to respond to Curlee's baseless allegations and attend numerous inappropriate Registry hearings" (Compl. at 34); (2) a permanent injunction prohibiting further violations of their rights of free speech and association and directing the Registry to rescind its judgment against the plaintiffs; (3) a declaration that the CFDA, Tenn. Code Ann. § 2-10-101 *et seq.*, as written and as applied, is unconstitutional; and (4) attorneys' fees, costs and interest.

On July 30, 2015, the defendants filed a Motion to Dismiss and supporting Memorandum (Doc. Nos. 7 and 8), asserting that the plaintiffs' claims are barred by the Eleventh Amendment and sovereign immunity. Alternatively, the defendants requested that the court abstain from exercising jurisdiction while the state administrative proceeding was ongoing, under *Younger v. Harris*, 401 U.S. 37 (1971). The court, finding *Younger* abstention to be appropriate, entered an Order on October 2, 2015, granting the motion and staying this case pending resolution of the ongoing state administrative proceedings and any related state court judicial proceeding. (Doc. No. 23.)

On May 26, 2017, the defendants filed their Renewed Motion to Dismiss and supporting Memorandum, which also served to provide notice to this court that the state administrative proceeding had terminated. The ALJ assigned to hear that case had entered an Initial Order on March 28, 2017, ruling that Williamson Strong was not a political campaign committee under Tenn. Code Ann. § 2-10-102(12)(A), reversing the imposition of civil penalties, and ordering that the all charges against Williamson Strong and the other plaintiffs be dismissed with prejudice. (*See* Doc. No. 24-1.) The ALJ also ruled that the issue of attorneys' fees would be deferred until after the case was decided on the merits and granted the plaintiffs 30 days from the date the Initial Order became a Final Order to submit a request for attorneys' fees. On April 12, 2017, the Registry unanimously voted not to appeal the decision. (Decl. of Drew Rawlins, Doc. No. 24-2.) In their Reply, the defendants further point out that the 60-day window for taking an appeal, under Tenn. Code Ann. § 4-5-322(b)(1)(A), has now closed. The plaintiffs do not contend otherwise, and it appears to be undisputed that the ALJ's order became an unappealable Final Order when the time to appeal expired on June 12, 2017. (*See* Doc. No. 32, at 1 n.1.)

Shortly thereafter, effective May 9, 2017, the Tennessee legislature enacted and Governor Haslam signed into law Public Chapter No. 347, which amended Tenn. Code Ann. § 2-10-102(12) by completely deleting the subsection under which the plaintiffs had been charged. (*See* 2017 Tenn. Pub. Acts, ch. 347, Doc. No. 24-3.)

In their Renewed Motion, the defendants argue that (1) the plaintiffs' claims for injunctive relief and damages against the Registry are barred by the Eleventh Amendment; (2) the plaintiffs' claims for damages against the members of the Registry are barred by the Eleventh Amendment; (3) the Complaint fails to state a claim for violation of the Tennessee constitution; and (4) all claims for injunctive relief have been rendered moot (a) by entry of the ALJ's Final

Order ruling that Williamson Strong did not qualify as a political action committee as defined at that time in Tenn. Code Ann. § 2-10-102(12)(A) and dismissing all claims against the plaintiffs in the underlying state administrative action and (b) by the Tennessee legislature's enactment of legislation amending the definition of "political campaign committee" by removing the portion of the statute under which the plaintiffs had been charged.

Upon the filing of the defendants' Motion, the court entered an Order lifting the stay and directing the plaintiffs to respond to the motion. The plaintiffs have now filed their Response, in which they argue only that the court should stay briefing and ruling on the Motion to Dismiss and continue the stay previously imposed by the court until the issue of attorneys' fees has been resolved in the underlying state administrative action. They estimated (as of the end of June when they filed their Response) that the fee issue should be resolved within 60 to 90 days. (Doc. No. 31, at 3.)

As set forth below, the court finds that a further stay is not warranted and that the defendants' motion should be granted based on (1) mootness, depriving the court of subject-matter jurisdiction, and (2) failure to state a claim for which relief may be granted.

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

The defendants seek dismissal, in part, for lack of subject-matter jurisdiction under Rule 12(b)(1). A challenge to subject-matter jurisdiction under Rule 12(b)(1) may be either a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleadings." *Id.* In reviewing such a motion, the court will accept the allegations in the complaint as true. *Id.* A factual attack, however, requires the court to weigh conflicting evidence provided by both parties

to determine whether subject-matter jurisdiction exists. *Id.* Thus, in reviewing a factual attack, the court may consider evidence outside the pleadings, and both parties may supplement the record with affidavits, documents, and other evidence. *Id.*

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must contain sufficient facts for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6) requires more than a "formulaic recitation of the elements of a cause of action." *Twombly* 550 U.S. at 555. While Twombly does not require "detailed factual allegations," it does require "more than labels and conclusions." *Id.* The court is not required to accept as true legal conclusions presented as factual allegations. *Iqbal*, 556 U.S. at 678. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

**III.    DISCUSSION**

**A.      Mootness and Subject-Matter Jurisdiction**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "When—for whatever reason—the dispute discontinues or [the court is] no longer able to grant meaningful relief to the prevailing party, the action is moot, and [the court] must dismiss for lack of jurisdiction." *Id.* (quoting *United States v. Blewett*, 746 F.3d 647, 661 (6th Cir. 2013) (Moore, J., concurring)). "[I]t is not enough that a dispute was very much alive when suit was filed. There must be a live

controversy at every stage of the litigation for [the court] to have Article III jurisdiction." *Id.* (internal quotation marks and citations omitted). "Mootness occurs 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 460 (6th Cir. 2007) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

At the time the plaintiffs filed this action, there was an actual controversy between the parties, because the Registry had found that Williamson Strong qualified as a political campaign committee, as defined by the then-current version of Tenn. Code Ann. § 2-10-102(12)(A), and had assessed civil penalties against it for failure to comply with the rules governing the activities of political campaign committees. Because there was an ongoing administrative proceeding in which the plaintiffs had full opportunity to raise any constitutional challenges to the application of the CFDA, the court found that *Younger* abstention was applicable and that the proceedings in this court should be stayed until the matter had been fully resolved in state court.

Since that time, however, two notable events have occurred. First, the ALJ reviewing the Registry's decision issued an order finding that Williamson Strong did not meet the statutory definition of a political campaign committee in § 2-10-102(12)(A) and dismissing the complaint and the civil penalties against it. On April 12, 2017, the Registry unanimously voted not to appeal that decision (Decl. of D. Rawlins, Doc. No. 24-2), and the ALJ's Order has become a final, unappealable order. And second, the Tennessee General Assembly amended the definition of political campaign committee contained in Tenn. Code Ann. § 2-10-102(12), removing the definition contained in subsection (A). This legislation became effective on May 9, 2017. (2017 Tenn. Pub. Acts, ch. 347, Doc. No. 24-3.)

"Legislative repeal or amendment of a challenged statute while a case is pending usually

eliminates [the] requisite case-or-controversy because a statute must be analyzed by the . . . court in its present form." *Ky. Right to Life v. Terry*, 108 F.3d 637, 644 (6th Cir. 1997). Nonetheless, "a case or controversy does not automatically cease to exist by mere virtue of a change in the applicable law, because, if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Green Party of Tenn.*, 700 F.3d at 822–23 (internal quotation marks and citations omitted). "The key question is therefore whether the challenged legislation has been sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided"—or whether "the new statute operates in the same fundamental way as the old statute." *Id.* at 823 (internal quotation marks and citations omitted).

The statute in effect when the plaintiffs filed suit defined "political campaign committee" as

> (A) A combination of two (2) or more individuals, including any political party governing body, whether state or local, making expenditures, to support or oppose any candidate for public office or measure, but does not include a voter registration program;
>
> (B) Any corporation or other organization making expenditures, except as provided in subdivision (4), to support or oppose a measure; or
>
> (C) Any committee, club, corporation, association or other group of persons which receives contributions or makes expenditures to support or oppose any candidate for public office or measure during a calendar year in an aggregate amount exceeding two hundred fifty dollars ($250).

Tenn. Code Ann. § 2-10-102(12) (2013) (amended May 9, 2017). Although the plaintiffs were originally charged in the state administrative action with meeting the definition in subsection (12)(C), the Registry found them to be a political campaign committee under the definition in subsection (12)(A). The ALJ reversed, finding that they did not meet the definition in subsection (12)(A).

The Tennessee legislature amended § 2-10-102(12) by removing subsection (12)(A) in its entirety and modifying subsection (12)(C) to increase the expenditure limit. In the new version, "political campaign committee" is defined as:

> (A) Any corporation or any other organization making expenditures, except as provided in subdivision (4), to support or oppose a measure; or
>
> (B) Any committee, club, corporation, association, or other group of persons which receives contributions or makes expenditures to support or oppose any candidate for public office or measure during a calendar year in an aggregate amount exceeding one thousand dollars ($1,000).

Tenn. Code Ann. § 2-10-102(12) (2017).[2] Because it is clear that the previous definition of the term under former § 2-10-102(12)(A) has been eliminated altogether from the statute, the court finds that "the challenged legislation has been sufficiently altered so as to present a substantially different controversy" from the one originally presented to this court. *Green Party of Tenn.*, 700 F.3d at 823 (internal quotation marks and citation omitted).

As set forth above, the actual claims in the Complaint are that the version of Tenn. Code Ann. § 2-10-102(12)(A) in effect when suit was filed violates the rights to free speech and free assembly protected by the First Amendment to the United States Constitution and Article I, Section 19 of the Tennessee Constitution. To remedy such violations, the plaintiffs seek an (1) award of damages to compensate them for being required "to respond to Curlee's baseless allegations and attend numerous inappropriate Registry hearings" (Compl. at 34); (2) a permanent injunctive prohibiting further violations of their rights of free speech and association and directing the Registry to rescind its judgment against the plaintiffs; (3) a declaration that Tenn. Code Ann. § 2-10-102(12)(A) violates the federal and state constitutions and (4)

---

[2] Subsection (4) excludes from the definition of "contribution" and, by extension, "expenditure," such things as services provided by volunteers on behalf of a candidate, news publications, nonpartisan activity designed to encourage individuals to register to vote or to vote. Tenn. Code Ann. § 2-10-102(4)(A)–(F).

attorney fees, costs and interest.

Clearly, the claims asserting that § 2-10-102(12)(A) are unconstitutional have now been rendered moot by the Tennessee legislature's abolition of the challenged portion of the statute. Likewise, the plaintiffs' requests for a declaration that the statute is unconstitutional and an injunction barring enforcement of it have likewise been obviated. Their demand that the Registry rescind its judgment has been rendered moot because the challenged judgment was reversed on appeal. In other words, all of the plaintiffs' claims for injunctive and declaratory relief must be dismissed for lack of subject-matter jurisdiction on the basis that they have been rendered moot.

### B. Failure to State a Claim

The only claims asserted in the Complaint that arguably have not been rendered moot by the combined effect of the dismissal of the administrative complaint and the statutory amendment are the plaintiffs' claims for damages. The court finds, however, that the Complaint fails to state a colorable claim for damages.

The damages claims against both the Registry (a state agency) and its individual members (state officials) in their official capacity are barred by the Eleventh Amendment. *See Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) ("[The Eleventh Amendment] bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that the Eleventh Amendment also precludes claims against state officials in their official capacity for damages). *Accord* Tenn. Code Ann. § 20-13-102(a) (barring claims for damages against the state and state officials in any "court in the state"); *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) ("We are persuaded that section 20-13-102(a) of the Tennessee Code, which expressly prohibits any suits in state court against the state . . . also extends

impliedly to suits brought in federal court.").

The claims for damages are therefore subject to dismissal for failure to state a claim for which relief may be granted.

## C.  Whether to Defer Ruling

As noted above, the plaintiffs did not respond to the merits of the defendants' motion and instead request that the court "stay briefing and ruling on the Motion to Dismiss and continue the stay [previously] imposed by the Court." (Doc. No. 31, at 1.) They argue that, because a claim for attorneys' fees is still pending in the state administrative proceeding, that proceeding is not "final" as contemplated by the court's October 2015 order. (*Id.* at 2.) They further posit that they "may amend their claims in the present litigation to assert claims for damages as a result of the Registry's callous and unconstitutional and unprecedented attempts to fine a group of parents for simply exercising their First Amendment rights." (*Id.* at 3.)

As an initial matter, the court notes that the Complaint already states claims for damages against both the Registry and its members, in their official capacity, which the court has determined are subject to dismissal for failure to state a claim for which relief may be granted.

Second, the court rejects the suggestion that the administrative proceeding is not "final." Under Tenn. Code Ann. §§ 4-5-314(b) and 4-5-315(b), the Registry had fifteen days from entry of the ALJ's initial order to request reconsideration; otherwise, the initial order became a final order. Under Tenn. Code Ann. § 4-5-322(b)(1)(A), the Registry then had sixty days from entry of the final order to seek judicial review of that order in the state courts. The ALJ's initial order was issued on March 28, 2017. (Doc. No. 24-1.) No request for reconsideration was filed by the Registry and, therefore, the order become a final order on April 12, 2017. The Registry had until Monday, June 12, 2017 to file a petition for judicial review of that order. The Registry voted not

to appeal and, in any event, the defendants represent that no such petition has been filed, which the plaintiffs have not challenged. Accordingly, the ALJ's March 28, 2017 order on the merits became a final, unappealable order under state law. The fact that the ALJ may still adjudicate a claim for attorneys' fees under state law does not call for a different conclusion.

The underlying implication of the plaintiffs' claim that the state administrative proceedings are not "final" is that, if attorneys' fees are not awarded in that forum, they might still be awarded in this forum. The plaintiffs indeed seek attorneys' fees as part of their relief in this case, but the Complaint does not actually state the basis for recovery of such fees. Because the plaintiffs' primary claims are brought under 42 U.S.C. § 1983, the court presumes that the demand for attorneys' fees is premised upon 42 U.S.C. § 1988(b), which provides that the court may, "in its discretion," award reasonable attorneys' fees to the prevailing party in a § 1983 action. Because it is clear, as discussed above, that all of the plaintiffs' substantive claims are subject to dismissal, the plaintiffs cannot—in this forum, at least—be deemed prevailing parties. Accordingly, they have no basis for recovering attorneys' fees under 42 U.S.C. § 1988, and they have not articulated any other legitimate basis for recovery of attorneys' fees.

Moreover, the case upon which the plaintiffs rely in support of their motion to extend the stay based on their outstanding claim for attorneys' fees, *Clay Cnty. Manor, Inc. v. Luna*, No. 3-89-0608, 1990 WL 140464 (M.D. Tenn. June 13, 1990), does not support their position. In that case, the district court was considering whether to dismiss the case before it on *Younger* abstention grounds. It found that, because there was no claim for damages and the plaintiff's claim for equitable relief was subject to dismissal based on the abstention doctrine, the plaintiff could not be a prevailing party for purposes of § 1988. Because the court found dismissal on abstention grounds to be appropriate, there was no primary claim to which the request for

attorney's fees could be attached. "Therefore, based upon no claim for monetary relief and the request for attorney's fees being ancillary, the Court [found] no bar to dismissal" under the abstention doctrine. *Id.* at *4.

The plaintiffs' claim for damages in this case will be dismissed for failure to state a claim for which relief may be granted, and their claims for equitable relief have been rendered moot, depriving the court of subject-matter jurisdiction. They have no viable claim for attorneys' fees in this court, and the fact that they might or might not be awarded attorneys' fees in the state administrative action—under state law—is no bar to dismissal of this case.

## IV.    CONCLUSION

For the reasons set forth herein, the court will deny the plaintiffs' request that it abstain from ruling on the Motion to Dismiss until the attorneys' fee issue still pending in the state administrative proceeding has been fully resolved. The court finds, based on the undisputed facts, that the plaintiff's claims for prospective injunctive and declaratory relief in this case have been rendered moot by the combined effect of the ALJ's dismissal of the administrative complaint against Williamson Strong and the Tennessee legislature's amendment of Tenn. Code Ann. § 2-10-102(12)(A). Insofar as the plaintiffs' claims for damages have not been rendered moot, the Complaint fails to state a claim for damages against the defendants—a state agency and state officials sued in their official capacity only—for which relief may be granted.

Accordingly, the defendants' Renewed Motion to Dismiss (Doc. No. 24) will be granted, and this action will be dismissed. An appropriate Order is filed herewith.

Enter this 8th day of August 2017.

_____
ALETA A. TRAUGER
United States District Judge